

# Missouri Court of Appeals

## Southern District

### In Division

PUBLIC WATER SUPPLY DISTRICT NO. 1 )
 of GREENE COUNTY MISSOURI, )
 )
Appellant, )
 )
vs. ) No. SD37695
 )
CITY OF SPRINGFIELD, MISSOURI, ) FILED: June 23, 2023
A MUNICIPAL CORPORATION, )
 )
Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Judge

## VACATED AND REMANDED

Public Water Supply District No. 1 of Greene County, Missouri ("PWSD-1") appeals the circuit court's judgment dismissing with prejudice PWSD-1's petition against the City of Springfield, Missouri ("Springfield") for failing to state a claim upon which relief can be granted. *See* Rule 55(a)(6).[1] We vacate and remand.

### Factual and Procedural Background

PWSD-1's petition contains twenty-six paragraphs in total, some of which initially fall under the heading "Allegations Common to all Counts" and the remainder fall under two

---

[1] All rule references are to Missouri Court Rules 2023.

denominated counts. PWSD-1's relevant "Allegations Common to all Counts" are as follows. "PWSD-1 is a public water supply district located in Greene County, Missouri, incorporated pursuant to an Order entered by the Circuit Court of Greene County . . . ." "PWSD-1 is a legally constituted political corporation of the State of Missouri" under the provisions of Chapter 247,[2] "and was created for the purpose of developing and providing an adequate water supply to serve and meet the needs of inhabitants within its legal territorial boundaries . . . ." "Springfield is a municipality of the State of Missouri located in Greene County" and "[b]y and through the Board of Public Utilities of the City of Springfield a/k/a/ City Utilities of Springfield, Springfield operates a water distribution system within and outside its city limits, including within the legally established boundaries of PWSD-1's Service Territory." PWSD-1 alleged it

> has brought this action, in part, to enforce its right to exclusive water distribution within the PWSD-1 Service Territory, as provided under Chapter 247 of Missouri's Revised Statutes, including but not limited to customers situated in residential developments commonly known as Teton Estates, Teton Estates First Addition, Monta Vista Heights, Abbey Lane, Abbey Lane First Addition and Abbey Lane Second Addition, all or portions of which are situated inside the PWSD-1 Service Territory ("the Disputed Areas").

"At all relevant times, PWSD-1 has and had the legal right to provide water service to the Disputed Areas, all of which are located within the boundaries of PWSD-1 . . . ." "Springfield has been selling and is continuing to sell water within PWSD-1's Service Territory to potential customers of PWSD-1."

"Count One" is denominated "Injunction Under State Law (Violation of [sections] 247.160, 247.170, and 247.172, RSMo.)" and "Count Two" is denominated "Violation of State Law – Damages (Violation of [sections] 247.160, 247.170 and 247.172, RSMo.)" and both

---

[2] "Chapter 247 governs public water supply districts." **Public Water Supply Dist. No. 16 v. City of Buckner**, 951 S.W.2d 743, 745 (Mo.App. 1997). All statutory references, including to the statutes found in Chapter 247, are to RSMo 2016.

counts begin with a paragraph that "incorporates by reference" all of the foregoing allegations. In Counts One and Two, PWSD-1 asserted that "Springfield has no right to provide water service within PWSD-1's Service Territory as established by the Greene County Circuit Court, unless and until the municipality complies with the provisions of [sections] 247.160, 247.170 and/or 247.172 RSMo." In support of this assertion, PWSD-1 quoted the following from *Staff of the Mo. Pub. Serv. Comm'n v. Consol. Pub. Water Supply Dist. C-1 of Jefferson Cnty., Mo.*, 474 S.W.3d 643, 656-57 (Mo.App. 2015):

> In fact, it is settled law that *unless* a statutory means for relieving a public water supply district of its right to provide water service within its territory is successfully pursued, a *municipality has no authority to provide water within the geographic boundaries of the district, and the public water supply district remains obligated and entitled to provide water service throughout its territory*.

According to PWSD-1, "Springfield has failed to comply with the requirements of [sections] 247.160, 247.170 and 247.172, RSMo., and Springfield's past sales and continuing sale of water within the PWSD-1 Service Territory is a violation of Missouri state law." In Count One, PWSD-1 asserted that it "does not have a proper and adequate remedy at law . . . " and in Count Two, that "PWSD-1 has suffered a financial loss as a result of Springfield accepting the conveyance and/or dedication of water delivery infrastructure from the developers who constructed such improvements within the PWSD-1 Service Territory and selling water within the PWSD-1 Service Territory."

A single "Prayer" follows the twenty-six paragraphs of PWSD-1's petition. In addition to a permanent injunction, monetary damages, and other remedies, PWSD-1 prayed for "[a] declaration that Springfield has no right and has never had any right to sell or supply water, directly or indirectly within the PWSD-1 Service Territory under Missouri state law[.]"

Springfield did not file an answer to PWSD-1's petition. Rather, Springfield filed a motion to dismiss the petition with prejudice and accompanying suggestions in support.

3

Springfield asserted PWSD-1 failed to state a claim on which relief can be granted for the following two reasons:

1. [PWSD-1]'s claims are based on the legally erroneous assertion that a city cannot sell water to customers in a public water supply district's service territory without first complying with [sections] 247.160, 247.170, or 247.172, RSMo. As Missouri courts have previously held, Chapter 247 does not give a public water district the exclusive right to sell water in its service territory and municipalities have a statutory right under [section] 91.050, RSMo, to sell water to customers in such territory. And, as discussed in the accompanying suggestions, the statutory provisions on which [PWSD-1] relies simply do not apply to the facts alleged.

2. Even if [sections] 247.160, 247.170, or 247.172, RSMo, applied to the facts alleged, [PWSD-1] cannot assert a claim against Springfield for damages and injunctive relief because those statutes do not create a private cause of action. Each statute specifies a particular enforcement mechanism, which [PWSD-1] is not even attempting to invoke. Because the legislature did not provide for or intend that there be a private cause of action for damages or injunctive relief for violation of these statutes, [PWSD-1] fails to state a claim.

Ultimately, the circuit court entered a judgment granting Springfield's motion to dismiss PWSD-1's petition with prejudice. The circuit court did not state the basis for its judgment of dismissal.

PWSD-1 timely appeals.

### Standard of Review

Our review of the grant of a motion to dismiss is *de novo*. *Epice Corp. v. Land Reutilization Auth. Of City of St. Louis*, 608 S.W.3d 725, 727 (Mo.App. 2020). "The Court treats the facts contained in the petition as true and in the light most favorable to the plaintiff." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 915 (Mo. banc 2016). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.* (internal quotation marks omitted). "A court reviews the petition in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *City*

4

*of Lake Saint Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010) (internal quotation marks omitted). "A judgment of dismissal will be affirmed if it is supported by any ground raised in the motion to dismiss." *Avery Contracting, LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo. banc 2016).

<u>Discussion</u>

PWSD-1 raises three points on appeal. While the first and second points directly address the merits of the two arguments raised in Springfield's motion to dismiss, it is PWSD-1's third point that proves to be dispositive. In its third point, PWSD-1 contends the circuit court erred in dismissing PWSD-1's petition, "because a claim for a declaratory action does not require that the party – on the merits – be entitled to the declaration sought," and in the case of its petition, "[PWSD-1] alleged facts upon which the trial court could issue a judgment adjudicating the questions [PWSD-1] sought to settle." We agree.

We begin by addressing Springfield's counter argument that PWSD-1 never intended to state a claim for declaratory judgment. Springfield notes that (1) neither of the two counts in PWSD-1's petition contain any reference to a declaratory judgment claim; and (2) when presented with Springfield's motion to dismiss, PWSD-1 never sought to amend its petition or otherwise clarify that its petition asserts a declaratory judgment claim. We reject both of these arguments.

First, while labeling causes of action in a petition is helpful, PWSD-1 was under no obligation to do so. "To properly plead a cause of action, the petition must state allegations of fact in support of each essential element of the cause pleaded." *Brock v. Blackwood*, 143 S.W.3d 47, 57 (Mo.App. 2004) (internal quotation marks omitted). "It is the facts stated in the petition, along with the relief sought, which under our system of code pleading are to be looked at to determine the cause of action, rather than the form of the petition." *Memco, Inc. v.*

5

*Chronister*, 27 S.W.3d 871, 875 (Mo.App. 2000). "[T]he rule is well established in Missouri that the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader." *American Eagle Waste Industries, LLC v. St. Louis County*, 379 S.W.3d 813, 829 (Mo. banc 2012). "To be deemed sufficient, a petition need not even label the theory upon which a plaintiff seeks recovery." *Id.* Thus, it is immaterial that PWSD-1 did not explicitly denominate a declaratory judgment cause of action within the petition.

Second, while informing the party seeking dismissal and the reviewing court precisely what causes of action are asserted by a petition is also helpful, PWSD-1, again, was under no obligation to do so. "The defendant bears the burden of establishing that the elements pled by the plaintiff fail to state a cause of action." *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 598 (Mo.App. 2000). "Plaintiff has no duty to respond to the defendant's motion to dismiss." *Id.* Thus, assuming the petition already states a declaratory judgment cause of action, it is immaterial that PWSD-1 did not amend the petition or otherwise clarify that this cause of action was already pled.

We next turn to and address PWSD-1's argument that it did state a claim for declaratory judgment, as well as Springfield's remaining counter argument that PWSD-1, even if it intended to state such a claim, failed to adequately do so. The Declaratory Judgment Act provides that "[a]ny person . . .whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." Section 527.020; *accord* Rule 87.02. To state a claim for a declaratory judgment, a court must be presented with: (1) "a justiciable controversy that presents a real, substantial, presently-existing controversy

6

admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation"; (2) "a plaintiff with a legally protectable interest at stake"; (3) a controversy ripe for judicial determination"; and (4) "an inadequate remedy at law." *Mo. State Conf. of NAACP v. State*, 601 S.W.3d 241, 246 (Mo. banc 2020). These requirements are "largely similar" to the requirements for actions seeking injunctive relief. *Id.* at 247. A declaratory judgment action may also properly seek additional relief, including a claim for damages. *City of Creve Coeur v. Creve Coeur Fire Protection Dist.*, 355 S.W.2d 857, 859 (Mo. banc 1962).

PWSD-1 argues, and we agree, that the factual allegations in its petition satisfy each of these elements. PWSD-1 presents a real, substantial, and presently existing controversy regarding whether Springfield has any right to supply water to the Disputed Areas. As a public water supply district under the provisions of Chapter 247, PWSD-1 has a legally protectible interest in providing water services within its territorial boundaries, including to the Disputed Areas. Because Springfield has been and is supplying water in the Disputed Areas, PWSD-1's claims are ripe for judicial determination. And, as Springfield continues to supply water in the Disputed Areas, damages alone are an inadequate legal remedy.

Springfield responds that PWSD-1 does not have a legally protectable interest because sections 247.160, 247.170, or 247.172 "do not confer a private cause of action." This argument, however, misses the mark. These statutes only apply in cases of a municipal annexation of public water service district territory, *see* sections 247.160.1 and 247.170.1, or where those parties (or water corporations subject to public service commission jurisdiction) enter into a written territorial agreement, *see* section 247.172. The petition contains no allegation suggesting either situation exists or is at issue here. The essence of the allegations in PWSD-1's petition is that PWSD-1 has an "exclusive" right to provide water services to the Disputed Areas and

7

Springfield's provision of water to the Disputed Areas is impinging this right. To be sure, PWSD-1's characterization of this alleged impingement in the petition as a "Violation" of sections 247.160, 247.170, or 247.172 was unartful. Nevertheless, PWSD-1's legal position appears to be that the mechanisms set out in those statutes, which PWSD-1 alleges Springfield "failed to comply with[,]" are the only avenues by which Springfield could legally overcome PWSD-1's "exclusive" right to provide water services to the Disputed Areas. For all of these reasons, we need not and do not express any opinion as to whether sections 247.160, 247.170, or 247.172 create a private right of action.

Springfield further responds that we must review the source of PWSD-1's legal rights to determine whether they actually exist. Springfield cites several authorities that, according to Springfield, all stand for the proposition that PWSD-1 has no "exclusive" right to provide water within the Disputed Areas. This argument also misses the mark. "A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." ***Ste. Genevieve School Dist. R II v. Board of Aldermen of City of Ste. Genevieve***, 66 S.W.3d 6, 10 (Mo. banc 2002). Here, PWSD-1 alleged that it is a legally constituted political corporation under the provisions of Chapter 247. Chapter 247 vests such entities with various legal rights, interests, and powers, including, but not limited to, the power "[t]o sell and distribute water to the inhabitants of the district and to consumers outside the district, delivered within or at the boundaries of the district[.]" Section 247.050(15). PWSD-1 further alleged that its power to sell and distribute water is affected, resulting in financial loss, by Springfield's supply of water to the Disputed Areas. Assuming the truth of these allegations (as we must), PWSD-1 clearly has a legally protectible interest at stake in this litigation.

8

As our supreme court has recognized, "[a]bsent from [the] elements [of a declaratory judgment action] is any suggestion that the party seeking a declaratory judgment fails to state a claim upon which relief can be granted if that party will not – on the merits – be entitled to the declaration sought." *Mo. State Conf. of NAACP*, 601 S.W.3d at 246.

> The test of the sufficiency of a complaint for a declaratory judgment is not whether it shows that plaintiff is entitled to a declaration in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all. It follows that the complaint need not allege facts showing that plaintiff is entitled to a declaration in his favor, and a complaint which shows on its face that plaintiff is advancing an erroneous contention of law is not therefor insufficient.

*Id.* (quotation marks and italics omitted).

Here, PWSD-1 pled facts satisfying the elements of a declaratory judgment action. PWSD-1 seeks relief including, "[a] declaration that Springfield has no right and has never had any right to sell or supply water, directly or indirectly within the PWSD-1 Service Territory under Missouri state law[.]" The issue of whether or not PWSD-1 is entitled to this sought-after relief, in light of the authorities cited and relied upon by Springfield, is ultimately irrelevant as to the question of whether PWSD-1 sufficiently stated claim for declaratory judgment. For these reasons, PWSD-1's third point is granted. We do not reach and need not address PWSD-1's first and second points addressing the merits of the two arguments raised in Springfield's motion to dismiss.

## Decision

The circuit court's judgment is vacated and the cause is remanded for further proceedings consistent with this opinion.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS

9