**James Dale REED, Appellant,**

v.

**AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, Respondent.**

**No. WD 67637.**

Missouri Court of Appeals, Western District.

Sept. 4, 2007.

Joseph K. Lewis, Jr., St. Joseph, MO, for Appellant.

Leah M. Mason, Kansas City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., PAUL M. SPINDEN, and LISA WHITE HARDWICK, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. James Reed appeals from a summary judgment that American Standard Insurance Company (American) is not liable to him for benefits under an insurance policy. We affirm.

## Factual and Procedural Background

Mr. Reed's children were killed in a one-car accident. The driver was uninsured. At the time of the accident, the children were living with their mother, Ms. Brandi Holbrook, in the home of their aunt, Natosha Teegarden, and uncle, Billy Teegarden. Mr. Teegarden had an insurance policy with American Standard Insurance Company. The policy provided coverage for the insured's relatives who are injured in car accidents with an uninsured motorist. The policy defined a relative as a person related to the insured and living in the insured's household. Mr. Reed filed a claim with American to obtain the benefits on behalf of his deceased children. American denied the claim because it determined that the children were not Mr. Teegarden's "relatives" or living in the household as defined in the policy. Mr. Reed brought a wrongful death action against American, alleging the deceased children were relatives because they were members of the Teegardens' household. In its answer, American denied that allegation and asked for a judgment in its favor.

American deposed Ms. Holbrook and the Teegardens. The deponents testified that Ms. Holbrook, her fiancée, and the children were only temporarily living with the Teegardens until they could afford to move into an apartment. Ms. Holbrook and her fiancée paid forty dollars a month to live in the Teegardens' house and had been living there only two months when the accident occurred. They also stated that the children lived downstairs in the basement, which was like an apartment, with Ms. Holbrook, her fiancée, and their baby. The accident occurred on August 18, 1999, and Ms. Holbrook stated they were scheduled to move into an apartment two days later. Subsequently, American filed a motion for summary judgment claiming that the children were not members of the insured's household based on the depositions. The trial court granted the motion, and Mr. Reed appeals.

## Standard of Review

Our review of a summary judgment is *de novo*. *Liberty Mut. Ins. Co. v. Havner*, 103 S.W.3d 829, 831 (Mo.App. W.D.2003). We assume all properly pled facts and supporting inferences by the nonmoving party are true, thereby reading the record in the light most favorable to the party against whom summary judgment was granted. *Id.* at 831–32. A summary judgment is proper when there is no genuine dispute of material facts and the moving party has a right to judgment as a matter of law. *Id.* at 831. Therefore, we will reverse if there is a genuine dispute as to a material fact or the trial court erred as a matter of law. *Id.* at 832. A genuine dispute exists when the record has two plausible but contrary accounts of key facts. *Id.*

## Legal Analysis

Mr. Reed argues that a summary judgment was improper because genuine issues of material fact existed as to whether the deceased children were living in the Teegardens' household at the time of the accident. He claims that construing the policy against American and viewing the evidence and reasonable inferences in the light most favorable to him suggests there are genuine issues of material fact; mainly, whether the deceased children were integrated

into the Teegardens' household at the time of the accident.

"Relative" is defined in the Teegardens' insurance policy as "a person living in your household, related to you by blood, marriage or adoption." Whether a person lived in another's household is a question of fact. *See Miller v. Secura Ins. & Mut. Co. of Wis.*, 53 S.W.3d 152, 159 (Mo.App. W.D.2001). In this case, a summary judgment is proper only if there is no genuine issue as to whether the children lived in the Teegardens' household, thus entitling American to judgment as a matter of law. To solve this issue, an interpretation of the policy term-"living in your household"-is required.

■ The meaning of an insurance contract especially coverage is a question of law. *Liberty*, 103 S.W.3d at 832. An ambiguous provision in an insurance contract is construed against the insurer. *Id.* As *living* and *household* are undefined in the policy, we must give those terms contextual meaning according to their plain and ordinary definitions. Mr. Reed argues that those terms should be construed in his favor because they are undefined in the policy and so ambiguous as to be susceptible to more than one interpretation.

■ "The term 'live' . . . has been found to be an 'ambiguous, elastic and relative' term that is synonymous with 'reside.'" *Miller*, 53 S.W.3d at 159. Mr. Reed argues that "living" should not be construed to mean "residing." He claims that "residing" connotes permanency whereas "living" does not. The plain meaning of "live" is "to occupy a home: DWELL, RESIDE." Webster's Third New International Dictionary 1323 (1993). Even if we were to construe *live* to mean *occupy*, the permanency requirement would still be an issue because it is an essential component of a household. "*Household* is a chameleon like word. The definition depends on

the facts of each case." *Liberty*, 103 S.W.3d at 832–33 (internal quotations omitted). *Liberty Mutual* suggests that these qualities indicate the ambiguous nature of the term *household. Id.* Nevertheless, *Liberty Mutual* defined a *household* as:

a collection of persons, whether related by consanguinity or affinity or not related at all but who live or reside together *as a single group* or unit which is *of a permanent* and domestic character, with one head, under one roof or within a single curtilage; *who have a common subsistence and who direct their attention toward a common goal* consisting of their mutual interest and happiness.

*Id.* at 833 (emphasis added)(quoting *Watt v. Mittelstadt*, 690 S.W.2d 807, 816 (Mo. App. W.D.1985)). The *Liberty Mutual* case concluded that this definition is ambiguous absent a definition in the policy. *Id.* Keeping this in mind, this court applies two theories to the particular facts to determine if a claimant is a member of the insured's household: (1) integration of the claimant in the insured's family, and (2) the claimant's permanency in the insured's home. *Am. Family Mut. Ins. Co. v. Brown*, 657 S.W.2d 273, 275 (Mo.App. W.D.1983). The first theory is supported when the claimant and the insured merge into a single family, where they do not live separately but share in the organization and management of the home. *See Mission Ins. Co. v. Ward*, 487 S.W.2d 449, 452 (Mo. banc 1972). The second theory is supported when the claimant has no present intention to leave the insured's home. *See id.*

Summary judgment may not be proper when the undisputed material facts support one of the theories, but there is a genuine dispute as to the other. *See Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204, 210–11 (Mo.App. E.D.1999); *Pruitt v.*

854

*Farmers Ins. Co.*, 950 S.W.2d 659, 665 (Mo.App. S.D.1997). However, when undisputed material facts support neither theory, summary judgment is proper. *See Liberty*, 103 S.W.3d at 833. In Missouri, neither theory is supported when the claimant resides with the insured on a temporary basis, is actively seeking another place to live, and living separately from the insured's family. *Giokaris v. Kincaid*, 331 S.W.2d 633, 638–40 (Mo.1960). "The *Giokaris* case established the rule in this state to the effect that if a relative lives in the home on a temporary basis he does not become a member of the household within the meaning of a provision such as the one before us." *Ward*, 487 S.W.2d at 451. Another case has stated that "[i]t is clear that if two families live together under a single roof temporarily until one family can find another place to live, separate households exist." *See Auto. Club Inter-Ins. Exch. v. Tonkins*, 509 S.W.2d 802, 805 (Mo.App.1974).

Mr. Reed points to two cases to support his theory that the functional character of the home is vital to a determination of whether someone is part of a household. *See Ward*, 487 S.W.2d at 452; *Giokaris*, 331 S.W.2d at 641. Both of the cases cited found separate households existed even though common areas of the house were shared, because the claimants lived separately and, therefore, did not integrate with the family, or the claimants paid for their part of living expenses while waiting for a place to live, and decided against permanency because the claimant actively sought a different place to live. *See Ward*, 487 S.W.2d at 452; *Giokaris*, 331 S.W.2d at 641. Thus, despite the sharing of a telephone and access to some areas of the second floor, the majority of the evidence suggests that the children were not part of the household. It is undisputed that the living arrangement was temporary, that Ms. Holbrook paid to live there, that the

children lived with her downstairs, and that the Teegardens did not provide for their subsistence. Additionally, they did not cook or eat with the Teegardens except on very few occasions. Thus, the children did not live in Mr. Teegarden's household at the time of the accident and were not considered insured under his insurance policy, so American is not liable on the policy. Because American has no liability, it had a right to judgment as a matter of law. Hence, summary judgment was proper. Mr. Reed's point is denied, and we affirm.

PAUL M. SPINDEN, and LISA WHITE HARDWICK, JJ. concur.